780 F.2d 1021
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)
LUTHER HORN, Plaintiff-Appellant,
vs.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 84-3981
 United States Court of Appeals, Sixth Circuit.
 11/26/85
 
 REMANDED
 S.D.Ohio
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 Before: LIVELY, Chief Judge; CONTIE and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves an appeal from the district court's judgment upholding the determination of the Secretary of Health and Human Services that Luther Horn is not disabled.
 
 
 2
 In August 1981, Luther Horn applied for disability benefits alleging May 25, 1981 to be his disability onset date. His application was denied both initially and upon reconsideration. An administrative law judge (ALJ), the Appeals Council and the district court affirmed.
 
 
 3
 Horn was born in April of 1945. He finished the eighth grade but is borderline illiterate. He was employed by Dayton Power & Light Company for thirteen to fourteen years. Prior to 1971, his primary occupation was driving trucks, although he did other general labor work as well. In December 1971, more than nine years before his application was filed, Horn injured his foot while on the job. This foot injury is the primary basis for his disability claim, although he also complains of lower back pain and nervousness.
 
 
 4
 As a result of his foot injury, Horn was hospitalized over the next few years for operations and was seen by several doctors. He had surgery for a bone fusion and graft, and for tarsal tunnel syndrome. He also had a few bouts with cellulitis. The fusion was not successful, and all doctors reported that Horn was suffering from persistent pain. At Dayton Power & Light he was transferred to a job considered to be sedentary work, and eventually he was asked to leave due to the number of medical restrictions placed upon him.[1] His back problem was diagnosed as degenerative disc disease of the lumbar spine.
 
 
 5
 In May 1981, he was seen by Dr. Stein, a doctor with whom Horn had had occasional contact since 1978. Dr. Stein prescribed prosthetic devices which apparently did not bring relief. He also determined that as of that date Horn could not continue with his previous work activity or do sedentary work because of his physical limitations.[2]
 
 
 6
 In January 1982, Horn was seen by the University of Dayton's Guidance Center for psychological evaluation. He was given intelligence, skill, and psychological tests.[3] These tests indicated that Horn was borderline illiterate and had a serious psychological impairment. The test relied on for the psychological evaluation, the MMPI, is a well-known, reliable psychological inventory.[4] Dr. Riley, the director of the Center, interpreted the MMPI scores and explained that Horn may have a tendency to exaggerate his problems, diagnosed him as being depressed and schizophrenic, and concluded that he was unemployable 'in any gainful occupation that would require exposure to any type of stress or pressure.'
 
 
 7
 In May 1982, Horn was seen at the Springboro Medical Center for a p ychological and vocational assessment.[5] The results were reported by Dr. Parsons, an occupational psychologist. Dr. Parsons concluded that Horn suffered from extreme depression, and 'coupled with very poor academic skills and limited work aptitudes' he was unable to engage in 'substantial gainful employment.'
 
 
 8
 The ALJ conceded that Horn had established a prima facie case, but concluded that Horn could perform other work. The ALJ relied on the testimony of a vocational expert who reasoned that Horn could perform duties of inspector or assembler if it were assumed that Horn could get relief from ten-minute breaks several times a day. The vocational expert did not take into account any of the psychological evidence in making his evaluation. The ALJ held that Dr. Stein's evaluation of Horn's sitting restrictions were incorrect and that Horn's claims of disabling pain were not credible. The ALJ also held that Mr. Riley's psychological report did not describe Horn's condition accurately. Specifically, the ALJ reasoned that since Horn's MMPI scores indicated that he might consciously attempt to exaggerate his condition, then his entire MMPI score might be invalid and Mr. Riley's diagnosis of schizophrenia was discredited.
 
 
 9
 The Appeals Council considered Dr. Parsons' evaluation, but affirmed the ALJ's opinion. The district court thereafter affirmed the final decision of the Secretary, reasoning that the ALJ acted within his discretion by discounting Dr. Stein's evaluation and the claimant's testimony concerning disabling pain. Further, the district court concluded that the reports of Dr. Parsons, Dr. Stein and Mr. Riley presented a conflict about the claimant's mental impairment which the ALJ was allowed to resolve.
 
 
 10
 After a claimant establishes a prima facie case, the Secretary has the burden to establish that a claimant can perform other 'substantial gainful work, and that there are jobs in the national economy which claimant can perform.' Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978). In the instant case, the Secretary did not come forward with any medical or psychological reports to rebut Mr. Horn's evidence. Rather, the Secretary's determination relies solely on the testimony of a vocational expert who was required by the ALJ to ignore documented medical restrictions, claims of pain and psychological impairments. The ALJ essentially concluded that all reports were not convicing or credible.
 
 
 11
 Although an ALJ is empowered to resolve issues of fact and credibility, Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir. 1978), "he is not free to set his own expertise against that of a physician who testified before him." Golofski v. Califano, 607 F.2d 1063, 1068 (3d Cir. 1979) (quoting Gober v. Matthews, 574 F.2d 772, 777 (3d Cir. 1978)).
 
 
 12
 The ALJ determined that the psychological tests did not support Mr. Riley's psychological evaluation. However, neither Dr. Stein nor Dr. Parsons presented conflicting evaluations of Mr. Horn's condition.[6] Similarly, despite Dr. Stein's report to the contrary, the ALJ determined that Mr. Horn could sit and stand for extended periods of time. Since this expert evidence is 'not controverted by substantial evidence to the contrary, the Hearing Examiner's decision adverse to such expert medical opinion, must be set aside.' Colwell v. Gardner, 386 F.2d 56, 72 (6th Cir. 1967).
 
 
 13
 The ALJ also held that Horn's testimony concerning his severe pain was not credible. Pain alone can be disabling, Glass v. Secretary of Health, Education & Welfare, 517 F.2d 224 (6th Cir. 1975) (per curiam), particularly when supported by medical evidence. Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 386 (6th Cir. 1978). Although Horn worked with pain in the past, that is not evidence of present ability to work with pain. Davis v. Califano, 605 F.2d 1067, 1072 (8th Cir. 1979) (per curiam); Johnson v. Califano, 572 F.2d 186, 188 (8th Cir. 1978). In this case, there were objective medical reports to support Horn's claims of pain. These claims were entitled to substantial weight. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). A vocational expert's response to a hypothetical question that required the vocational expert to ignore the claimant's assertions of pain can therefore not be relied on as the sole support the the Secretary's decision. Glass v. Secretary of Health, Education & Welfare, 517 F.2d 224 (6th Cir. 1975) (per curiam).
 
 
 14
 This case is therefore REMANDED to the administrative law judge for proceedings consistent with this opinion, with leave to consider other evidence if deemed necessary.
 
 
 
 [1]
 Early in 1979, one doctor prescribed that Horn should not walk more than one-half hour per four hour shift due to 'persistent [left] foot arthritis and swelling.' Other doctors also diagnosed him as having pseudoarthosis
 
 
 [2]
 In his evaluation, Dr. Stein wrote that Horn could only stand/walk between two and one-half and four hours, alternately sit and stand two and one-half to four hours and occasionally lift eleven to twenty pounds
 
 
 [3]
 These included the Wechsler Adult Intelligence Scale-Revised (WAIS-R), Wide-Range Achievement Test (WRAT), and Minnesota Multiphasic Personality Inventory (MMPI)
 
 
 [4]
 It is recognized as such by the Secretary. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, Sec. 12(A) (where the MMPI is characterized as a 'well-standardized psychological test.')
 
 
 [5]
 Horn was given the General Aptitude Test Battery (GATB) and the Rorschach Ink Blot Test
 
 
 [6]
 Dr. Stein wrote 'it certainly would be our impression that the patient would have sustained enough pain with attempted work activity to produce the depression described [in Mr. Riley's evaluation].' (Emphasis added). Dr. Parsons reported that Mr. Horn suffered from 'extreme depression' and 'exhibit[ed] generalized anxiety.' This simply does not present a conflict with Dr. Riley's finding of depression and schizophrenia